**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
Fresno Division**

| | | |
|---|---|---|
| ROGER SOTO, | ) | |
| | ) | **Case No. _____** |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| UNITED AIRLINES, INC. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| *Defendant.* | ) | |
| | ) | |

## **INTRODUCTION**

1. Plaintiff Roger Soto ("Mr. Soto" or "Plaintiff") seeks relief from Defendant United Airlines, Inc. 's ("United") pattern of discriminatory, unconstitutional, and illegal behavior against employees who request religious or medical exemptions from United's COVID-19 vaccination mandate policy.

2. United implemented a COVID-19 vaccine mandate as a condition of employment for all employees, including Plaintiff, that was tyrannical, coercive, and lacking in all scientific reasoning.

3. As a result of United's illegal policies, Mr. Soto was subject to discriminatory treatment, wrongful constructive termination, and assault at the hands of United Airlines, Inc.

4. Plaintiff now seeks declaratory and compensatory relief for United Airlines, Inc.'s ("Defendant's") illegal COVID-19 vaccination mandate and the financial and emotional distress injury Plaintiff sustained as a result.

1

5. This case calls into question whether a large, private corporation, such as United Airlines, can force its employees to submit to experimental medical procedures as a condition of continued employment through the implementation of a mandate.

## PARTIES

6. Plaintiff Roger Soto is a flight attendant for United who requested an exemption from the mandatory vaccination on religious grounds. Mr. Soto was denied any accommodation and was placed on unpaid leave. He is a resident of Calaveras County, California.

7. Defendant United Airlines, Inc. ("United"), is a large, major American airline headquartered at Willis Tower in Chicago, Illinois. United Operates a large domestic and international route network with a fleet of roughly 834 aircraft and approximately 67,000 employees. United is the current or former employer of Plaintiff.

8. At all relevant times, United knew or should have known the laws, policies, practices, and conditions alleged herein.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332 as the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000) exclusive of interest and costs and is between citizens of different states.

10. This Court has supplemental jurisdiction over the state claims raised in this matter pursuant to 28 U.S.C. § 1367. Plaintiff seeks remedies under California common law.

11. Venue is proper under 28 U.S.C. §1391(b)-(e) because substantial parts of the acts or omissions giving rise to the claim occurred in this district.

12. An actual and justiciable controversy exists between Plaintiff and Defendant.

## FACTS AND BACKGROUND

13. On August 6, 2021, United became the first airline carrier and one of the first large corporations to mandate a vaccine for COVID-19 as a condition of employment for its workforce.

14. This announcement followed several months of deception, manipulation and coercion by United to incentivize employees to "voluntarily" receive the vaccine with additional pay and benefits and later through threats of lost wages and termination.

15. Under the guise of safety, United decided it would be first in the aviation industry to mandate the COVID-19 vaccine. In so doing, United conducted a significant encroachment into the lives and health of every United employee by coercing employees to undertake an experimental medical procedure that affects their lives outside the workplace.

16. United announced that all employees would be required to become fully vaccinated for COVID-19 within five weeks of the FDA granting full approval of a vaccine, or five weeks after September 20, 2021, whichever came first. While initially setting a date in late October as the deadline for employees to prove their vaccination status, United Airlines, Inc. ultimately moved the deadline to September 27, 2021.

17. To become "fully vaccinated" an employee was required to show proof that he or she received two doses of the Pfizer or Moderna vaccine or one dose of the Johnson & Johnson vaccine. Employees who remained unvaccinated by that deadline would be terminated.

18. United implemented an accommodation request system in which Plaintiff was given the option to request accommodations based on religious beliefs or medical reasons via

United's Reasonable Accommodation Process. Employees were not allowed to seek both religious and medical accommodations, but were forced to choose between their constitutionally and federally protected rights.

19. Plaintiff was required to submit his exemption and accommodation request by August 31, 2021. After that date, no requests would be accepted.

20. On or about September 9, 2021, United began "granting" requests for "accommodations" stating that for any accommodation request granted, those employees who sought the same would be placed on indefinite, unpaid leave starting October 2, 2021, with no benefits. This was no accommodation at all but another name for being constructively fired.

21. United never provided any "accommodated" employee or Plaintiff with a date by which they could return to work; and stated this period of unpaid leave might last up to 72 months.

22. Plaintiff was informed that any employee whose accommodation request was denied must receive the vaccine by September 27, 2021, or be terminated.

23. Plaintiff and his colleagues were never meaningfully considered for accommodations, and those exemptions granted were essentially the same as being terminated by being placed into an unpaid medical leave or unpaid leave of absence for an unknown period of time.

24. This adverse employment action was unreasonable, open-ended, punitive, and retaliatory in nature to all employees who did not choose to be vaccinated. United's coercive policy was done with the intent to discrimination, segregate, humiliate, and intimidate employees who sought an exemption on religious or medical grounds.

25. While United sought a 100 percent vaccination rate for flight crew, the passengers had no such vaccine requirement and were allowed to board wearing a mask. Even after removing all unvaccinated crew members from its ranks, United never operated a single passenger flight that contained only vaccinated persons. It is clear, the intent was never safety, it was the appearance of safety, at the expense of the rights of employees who did not receive the experimental vaccine, which does not prevent the spread of COVID-19.

26. Indeed, having a fully vaccinated workforce did not prevent the spread of the COVID-19 virus at United Airlines.

**United's Treatment of Plaintiff Roger Soto**

27. Plaintiff Rogelio Soto was employed as a flight attendant for United. Mr. Soto had been working in his position for twenty-five years.

28. Mr. Soto is a devout traditional Roman Catholic. As part of his faith, he believes that the sanctity of life is one of the most cherished commandments of his faith.

29. Taking an injection of a vaccine that uses aborted fetal tissue in its use and/or development violates his strongly held religious beliefs, honoring the Fifth Commandment of "Thou Shalt Not Kill."

30. On August 10, 2021, Mr. Soto submitted his religious exemption request, along with a letter from his priest explaining his conflict of conscience with the COVID-19 vaccines, via United's Help Hub. The next day, Mr. Soto received notice that his exemption request had been received, but additional supporting documents were required.

31. On August 13, 2021, Mr. Soto received a phone call from Adrienne Kelly, a representative in United's Employee Service Center, requesting to ask additional questions regarding his religious exemption as a condition of his exemption request.

Later that day, during their conversation, Ms. Kelly asked a series of comprehensive and intrusive questions while interrogating Mr. Soto about his religious beliefs.

32. Yet again on August 25, 2021, Mr. Soto was contacted via an email from Human Resources stating that his position on vaccines was not clear and more information was required, although Mr. Soto had provided ample evidence regarding his religious conflict with United's COVID-19 vaccine mandate.

33. Mr. Soto responded to United's second request for additional information on August 26, 2021.

34. Mr. Soto did not receive a response to his email. On August 31, 2021, Mr. Soto called Adrienne Kelley to seek an update on his religious exemption. Ms. Kelley did not answer or return Mr. Soto's call.

35. Although United ultimately granted Mr. Soto's religious exemption, rather than provide an accommodation, United placed Mr. Soto on an unpaid, unprotected, and unelected leave of absence.

36. Mr. Soto and his family were significantly damaged by United's actions. Both Mr. Soto and his wife were under immense stress and emotional distress as a result of United's discriminatory conduct, coercion, and constant holding of Mr. Soto's employment hostage.

37. On October 3, 2021, shortly after Mr. Soto was placed on unpaid leave, Mr. Soto's wife had a heart attack that is believed to have been caused by the undue stress that resulted from United's actions.

38. United terminated Mr. Soto's health insurance on December 1, 2021, leaving Mr. Soto and his wife, who recently withstood a heart attack, without any medical coverage.

39. Mr. Soto was forced to stay on unpaid leave for several months, during which time he was denied all pay and benefits.

40. Mr. Soto was subject to unlawful termination, in violation of long-held public policy, federal law, and state law protecting religious freedoms in the workplace.

## FIRST CAUSE OF ACTION
### Wrongful Discharge In Violation of Public Policy

41. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

42. The tort cause of action for wrongful termination in violation of public policy provides a vehicle for recourse that otherwise would be unavailable under general rules of the at-will employment doctrine.6 *Phillips v. St. Mary Reg'l Med. Ctr.*, 96 Cal. App. 4th 218, 225–26, 116 Cal. Rptr. 2d 770, 775 (2002). First recognized by the California Supreme Court in *Tameny v. Atlantic Richfield Co.,*7 this public policy exception allows an employee to bring a tort cause of action against an employer who terminates an at-will employment on a ground that violates fundamental public policy. *Id.*

43. The exception is based on the principle that, although an employer may terminate an at-will employee for no reason, or any arbitrary or irrational reason, the employer has no power to terminate the employee for a reason contrary to the law or fundamental public policy.

44. To support a wrongful discharge claim, the policy must be "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental." *Phillips v. St. Mary Reg'l Med. Ctr.,* 96 Cal. App. 4th 218, 226, 116 Cal. Rptr. 2d 770, 775 (2002)

7

45. In addition to being violative of the California State Constitution, the Fair Employment and Housing Act (FEHA) establishes a civil right to be free from job discrimination based on certain classifications, including religion.

46. 15 Government Code section 12920 provides: "It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgement on account of race, religious creed, color, national origin, ancestry, physical disability, medical disability, medical condition, marital status, sex, age, or sexual orientation." FEHA's provisions prohibiting discrimination may provide the policy basis for a claim for wrongful discharge in violation of public policy. *Phillips v. St. Mary Reg'l Med. Ctr.*, 96 Cal. App. 4th 218, 227, 116 Cal. Rptr. 2d 770, 776 (2002).

47. United's actions infringing on Mr. Soto's religious beliefs, denying any reasonable accommodation for his religious conflict with United's vaccine mandate, and adverse employment action against Mr. Soto for exercising his religious beliefs is in direct violation to state law and established freedoms.

48. It is in the public interest to be protected from discriminatory employment practices that violate long-standing principles of the free exercise of religion.

49. This right had been well established as of 2021 when United implemented its mandate. Both the California and United States Constitutions recognize the right to free exercise of religion. It is further codified in numerous federal and state civil rights law, and particularly in the employment context.

50. This is a substantial infringement on Mr. Soto's religious beliefs. Adhering to his beliefs did not have a minor consequence; rather, it cost him his entire job and livelihood. Under

United's view, refusing to inject oneself with an experimental drug that contains cells from aborted babies is a fireable offense.

51. This is a clear exception to the default at-will employment doctrine. Allowing an employer to wantonly disregard an employee's religious beliefs in this manner would gut religious freedoms in the employment context.

### SECOND CAUSE OF ACTION
**Common Law Assault**

52. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

53. Under California law, the elements of a claim for civil assault are that: (1) a defendant intended to cause harmful or offensive conduct, or the imminent apprehension of such contact; and (2) a plaintiff was put in imminent apprehension of such contact. *See Austin v. Terhune,* 367 F.3d 1167, 1172 (9th Cir.2004) (citations omitted); *see also Judicial Council of California Approved Jury Instructions,* CACI 1301.

54. Defendant has threatened intentional, imminent harmful and offensive contact upon Plaintiff by way of forced vaccine injection of an experimental, untested, and ineffective mRNA vaccine, under penalty of being terminated from his employment.

55. Defendant's coercion, emboldened by tight deadlines, uncompromising exemption protocols, and a hostile and censored work environment, contributed to Plaintiff's stress and fear concerning Defendant's vaccine mandate.

56. Defendant's COVID-19 vaccine mandate caused Plaintiff to reasonably believe that Defendant was about to carry out the threat of harmful and offensive contact upon him, by way of forcing Plaintiff to inject an untested and potentially unsafe substance into his body.

57. Plaintiff did not consent to United's conduct, nor did he consent to receiving the COVID-19 vaccine. Defendant's unlawful requirement of employment was an unwelcome invasion of Plaintiff's privacy and bodily integrity.

58. United's COVID-19 vaccine mandate has caused Plaintiff harm, including but not limited to by way of fear, anxiety, fright over being threatened with the injection of an untested and potentially unsafe substance into the body, and the resulting loss of his income and livelihood either temporarily or permanently.

59. United's conduct alleged herein was a substantial factor in causing Plaintiff harm.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

a. A finding that Defendant wrongfully discharged Plaintiff in violation of California public policy;

b. A finding that Plaintiff has a fundamental right to his bodily autonomy, and to make health decisions in accordance with his beliefs and conscience.

c. A finding that Defendant wrongfully engaged in assault against Plaintiff;

d. An order that Plaintiff be compensated, to the extent allowable, for his monetary damages;

e. An order that Defendant pay Plaintiff's costs associated with bringing this lawsuit, including their reasonable attorneys' fees and costs; and

f. A grant of any such further relief as the Court deems necessary and proper in the public interest.

DATED: September 27, 2023                    Respectfully submitted,

  /s/ Robert E. Barnes
Robert E. Barnes, Esq.
California Bar No. 235919
Lexis Anderson, Esq.
*Subject to admission pro hac vice*
BARNES LAW
700 South Flower Street, Suite 1000
Los Angeles, California 90017
Telephone: (310) 510-6211
Email: robertbarnes@barneslawllp.com
Email: lexisanderson@barneslawllp.com

***Counsel for Plaintiff Roger Soto***