1  Michelle A. Clark, Bar No. 243777
   Miclark@littler.com
2  Gerardo Hernandez, Bar No. 292809
   ghernandez@littler.com
3  Emilio A. Rodriguez, Bar No. 340877
   earodriguez@littler.com
4  Littler Mendelson P.C.
   5200 North Palm Avenue
5  Suite 302
   Fresno, California 93704.2225
6  Telephone:    559.244.7500
   Fax No.:      559.244.7525
7
   Attorneys for Defendant
8  UNITED AIRLINES, INC.

9

                    UNITED STATES DISTRICT COURT
10
                  EASTERN DISTRICT OF CALIFORNIA
11

12
   ROGER SOTO,                        Case No. 2:23-cv-02148-DJC-JDP
13
              Plaintiff,              **DEFENDANT UNITED AIRLINES,**
14                                    **INC.'s MEMORANDUM OF POINTS**
        v.                            **AND AUTHORITIES IN SUPPORT OF**
15                                    **MOTION TO DISMISS OR IN THE**
   UNITED AIRLINES, INC.,             **ALTERNATIVE TO TRANSFER**
16                                    **VENUE**
              Defendant.
17                                    **Date:  March 28, 2024**
                                      **Time: 1:30 p.m.**
18                                    **Ctrm.: 10**

19
                                      Presiding Judge: Daniel J. Calabretta
20
                                      Complaint Filed: September 27, 2023
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

DEFENDANT UNITED AIRLINES, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS, OR IN THE ALTERNATIVE, TRANSFER VENUE ................... 9

I.      INTRODUCTION ...................................................................................... 9

II.     FACTUAL BACKGROUND ..................................................................... 10

III.    ARGUMENTS AND AUTHORITIES........................................................ 11

A.      THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT ................... 11

      1.    General Personal Jurisdiction ......................................................... 11

      2.    Specific Personal Jurisdiction ........................................................ 12

B.      THE EASTERN DISTRICT OF CALIFORNIA IS NOT A PROPER VENUE. ....................................................................................... 14

      1.    This Case Should be Dismissed for Improper Venue Pursuant to FRCP 12(b)(3) ................................................................................ 14

      2.    Dismissal of The Case for Improper Venue is Warranted Via 28 U.S.C. § 1406.................................................................................. 16

      3.    If The Court Opts to Transfer Rather Than Dismiss, The Northern District of Illinois is The Most Proper Venue................................. 17

C.      THE NORTHERN DISTRICT OF ILLINOIS IS THE MOST CONVENIENT VENUE UNDER THE 28 U.S.C. § 1404(A) TRANSFER ANALYSIS.................. 17

      1.    The Private Interest Factors Favor Transfer to the Northern District of Illinois ........................................................................... 18

      2.    Other Public Interest Factors Weigh in Favor of Transfer to the Northern District of Illinois. .......................................................... 21

D.      PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM. ........................................................................ 23

      1.    Plaintiff Cannot State A Claim For Wrongful Termination in Violation of Public Policy.............................................................. 24

      2.    Plaintiff Cannot State A Claim For Assault..................................... 28

IV.     CONCLUSION....................................................................................... 29

LITTLER
MENDELSON, P.C.
500 Capitol Mall
Suite 2000
Sacramento, CA
95814
916.830.7200

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Amba Marketing Systems, Inc. v. Jobar Int'l, Inc.*,
   551 F.2d 784 (9th Cir. 1977) ................................................................11

*Anderson v. United Airlines, Inc.*,
   No. 23-C-989, 2023 WL 5721594 (N.D. Ill. Sep. 5, 2023) ...............................11, 21

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020)..............................................................23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................24, 25, 26

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................24, 25

*Berry v. Dep't of Soc. Servs.*,
   447 F.3d 642 (9th Cir. 2006) ................................................................28

*BNSF Ry. v. Tyrrell*,
   581 U.S. 402 (2017).........................................................................12

*Bristol-Myers Squibb Co. v. Superior Court (BMS)*.
   137 S. Ct. 1773 (2017)...................................................................13, 14

*Broadnax v. Adams & Assocs., Inc.*,
   817 Fed.Appx. 512 (9th Cir. 2020)...........................................................26

*Budwig v. Allegiant Air, LLC*,
   No. 1:18-cv-01068-EPG (E.D. Cal. Sep. 2, 2020)..............................................28

*Caraffa v. United Airlines, Inc.*,
   No. 1:23-cv-01800, Dkt. 1 (N.D. Ohio Sept. 15, 2023).........................................11

*Continental Grain Co. v. Barge FBL-585*,
   364 U.S. 19 (1960)..........................................................................22

*Courtelis v. Rosenberg*,
   No. 5:20-cv-220, 2022 WL 987941 (E.D. Ky. Mar. 31, 2022) ...................................18

*Cubbage v. Merchent*,
   744 F.2d 665 (9th Cir. 1984) ................................................................11

LITTLER
MENDELSON, P.C.
500 Capitol Mall
Suite 2000
Sacramento, CA
95814
916.830.7200

**TABLE OF AUTHORITIES**
(continued)

Page

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014).............................................................................................12

*Data Disc, Inc. v. Systems Tech. Assoc., Inc.,*
   557 F.2d 1280 (9th Cir. 1984) ......................................................................11, 12

*Decker Coal Co. v. Commonwealth Edison Co.,*
   805 F.2d 834 (9th Cir. 1986) ............................................................................18

*Doe v. Cal. Dep't of Corr. & Rehab,*
   43 Cal.App.5th 721 (2019) ................................................................................25

*Duke v. City Coll. of San Francisco,*
   445 F.Supp.3d 216 (N.D. Cal. 2020) ................................................................26

*Ellis v. United Airlines, Inc.,*
   No. 23-cv-123 ................................................................................................11, 22

*Engstrom v. Air Line Pilots Ass'n,*
   Case No. 6:22-cv-2130-WWB-RMN, Dkt. 53 (M.D. Fla. Nov. 6, 2023) ...............15

*Engstrom v. United Airlines, Inc., Air Line Pilots Ass'n, Int'l,*
   22-CV-2130-WWB-DAB, Dkt. 48 (M.D. Fla., June 6, 2023) ...................11, 15, 16

*Estes v. Monroe,*
   120 Cal.App.4th 1347 (2004) ............................................................................28

*Gage v. Mayo Clinic,*
   No. CV-22-02091, 2023 WL 3230986 (D. Ariz. May 3, 2023) ....................27, 29

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
   564 U.S. 915 (2011).............................................................................13, 14, 16

*Gulf Oil Corp. v. Gilbert,*
   330 U.S. 501 (1947)..................................................................................22, 23, 24

*Guz v. Bechtel National, Inc.*
   24 Cal.4th 317 (2000) ........................................................................................26

*In re Hall, Bayoutree Associates, Ltd.,*
   939 F.2d 802 (9th Cir. 1991) ............................................................................17

*Hassett v. United Airlines, Inc.,*
   No. 23-cv-0960-P..........................................................................................11, 20, 21

LITTLER MENDELSON,
P.C.
500 Capitol Mall
Suite 2000

# TABLE OF AUTHORITIES
(continued)

**Page**

*Hoffman v. Blaski*,
    363 U.S. 335 (1960)................................................................................................23

*Holmes v. Gen. Dynamics Corp.*
    17 Cal.App.4thh 1418........................................................................................25

*House v. Rexam Bev. Can Co.*,
    630 Fed. Appx. 461 (6th Cir. 2015).................................................................25

*Hunt v. Erie Ins. Group*,
    728 F.2d 1244 (9th Cir. 1984) ..........................................................................11

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000) .............................................................................19

*Kay v. Nat'l City Mortg. Co.*,
    494 F. Supp. 2d 845 (S.D. Ohio 2007) .....................................................19, 22

*Leake v. Raytheon Tech Corp.*,
    No. CV-22-00436-TUC-RM, 2023 WL 224857 (D. Ariz. Feb. 27, 2023)............27

*Limited v. Tellabs, Inc.*,
    639 F. Supp. 2d 761 (2009) ..............................................................................20

*Lockman Found. v. Evangelical Alliance Mission*,
    930 F.2d 764 (9th Cir. 1991) ............................................................................22

*Lou v. Belzberg*,
    834 F.2d 730 (9th Cir. 1987) ............................................................................19

*Loury v. Standard Oil Co.*,
    63 Cal.App.2d 1 (1944) ................................................................................30, 31

*Mayes v. Kaiser Found. Hosps.*,
    917 F.Supp.2d 1074 (E.D. Cal. 2013)...........................................................26, 27

*Metoyer v. Chassman*,
    504 F.3d 919 (9th Cir. 2007) .........................................................................27, 28

*Mid-Continent Cas. Co. v. Petroleum Sols.*,
    629 F. Supp. 2d 759 (S.D. Tex. 2009) ...........................................................19

*Miller v. Hambrick*,
    905 F.2d 259 (9th Cir. 1990) ............................................................................17

**TABLE OF AUTHORITIES**
(continued)

Page

*Myers v. United Airlines, Inc.*,
  No. 1:23-cv-11113, Dkt. 7 (D. Mass. May 17, 2023) ................................................. 11

*Oka v. United Airlines, Inc.*,
  2:23-cv-135-DLB-CJS, Dkt. 22 (E.D. Kent. 2023) ................................................. 11

*Panaro, et al v. United Airlines, Inc.*,
  No. 2023-CV-154 (E.D. Tenn. Nov. 6, 2023) ................................................. 11

*Peterman v. International Brotherhood of Teamsters*,
  174 Cal.App.2d 184 (Cal. Ct. App. 1959) ................................................. 25

*Plotnik v. Meihaus*,
  208 Cal. App. 4th 1590 (2012) ................................................. 30

*Realtime Data LLC v. Nexenta Sys., Inc.*,
  No. CV21707690SJOJCX, 2018 WL 2724776 (C.D. Cal. Jan. 23, 2018) ................................................. 15

*Regueiro v. Am. Airlines, Inc.*,
  No. 19-23965-Civ-Martinez-Louis, 2022 U.S. Dist. LEXIS 116153 (S.D. Fla.
  June 30, 2022) ................................................. 12

*Rogers v. Nebraska Urb. Indian Health Coal., Inc.*,
  8:22-CV-410, 2023 WL 2990720 (D. Neb. Apr. 18, 2023) ................................................. 28

*Safarian v. Maserati North America, Inc.*,
  559 F. Supp. 2d 1068 (C.D. Cal. 2008) ................................................. 18

*So v. Shin*,
  212 Cal.App.4th 652 (2013) ................................................. 30

*Spiegelberg v. Collegiate Licensing Co.*,
  402 F. Supp. 2d 786 (S.D. Tex. 2005) ................................................. 19

*Sterling v. United Airlines, Inc.*,
  No. 23-cv-1077 (N.D. Tex. Oct. 24, 2023) ................................................. 11

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988) ................................................. 18

*Troulliet v. Gray Media Grp., Inc.*,
  No. CV 22-5256, 2023 WL 2894707 (E.D. La. Apr. 11, 2023) ................................................. 28

LITTLER MENDELSON,
P.C.
500 Capitol Mall
Suite 2000

6

# TABLE OF AUTHORITIES
(continued)

Page

*Vallarta v. United Airlines, Inc.*,
497 F. Supp. 3d 790 (N.D. Cal. 2020) ...................................................................12

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) ................................................................................24

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) (en banc) ................................................................20

*Walden v. Fiore*,
571 U.S. 277 (2014) ..............................................................................................13

*Welenco, Inc. v. Corbell*,
Civ. S-13-0287 KJM CKD (E.D. Cal. 2014) ........................................................19

*Whitehead v. Pacifica Senior Living Mgmt. LLC*,
No. 21-15035, 2022 WL 313844 (9th Cir. 2022) .................................................26

*Wickstrom, et al. v. Air Line Pilots Ass'n, Int'l*,
No., 22-cv-00315, 2023 WL 3103836 (W.D. Tex. April 25, 2023) ................11, 21

*Wood v. Santa Barbara Chamber of Commerce*,
705 F.2d 1515 (9th Cir. 1983) ..............................................................................17

**Statutes**

28 U.S.C. § 1391(d) ........................................................................................................15

28 U.S.C. § 1404 ..................................................................................................9, 18, 22

28 U.S.C. § 1404(A) ..........................................................................................18, 19, 22

28 U.S.C. § 1406 ......................................................................................................17, 18

28 U.S.C. § 1406(a) ........................................................................................................17

42 U.S.C. § 2000e-5(f)(3) ...............................................................................................16

28 USC § 1391 ................................................................................................................14

28 USC § 1391(b) ...........................................................................................................15

ADA ..........................................................................................................................11, 21

Cal.Civ.Proc.Code § 410.10 (West 1973)......................................................................11

LITTLER MENDELSON,
P.C.
500 Capitol Mall
Suite 2000

7

# TABLE OF AUTHORITIES
(continued)

Page

Cal. Gov. Code § 12965(a)(4)....................................................................................16

California Code of Civil Procedure Section 335.1 ...............................................29, 30

California's Fair Employment and Housing Act ......................................................16

Title VII of the Civil Rights Act ............................................................... *passim*

FEHA .................................................................................................... *passim*

**Other Authorities**

(2 C.C.R. § 11068(c)) ...........................................................................................28

Fed. R. Civ. P. 12(b)(2)........................................................................................11

Fed. R. Civ. P. 45(c)(1)(a) ....................................................................................20

FRCP 12(b)(3) ..............................................................................................14, 15

https://www.caed.uscourts.gov/caednew/index.cfm/news-archive/eastern-district-of-
      californiae28099s-judicial-emergency-exacerbated-by-the-coronavirus-disease-
      2019-covid-19-pandemic/ (last visited Jan. 2, 2024)............................................23

https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8205255/ (last visited Jan. 2, 2024)................29

https://www.ncronline.org/news/opinion/catholics-seeking-religious-exemptions-
      vaccines-must-follow-true-church-teaching (last visited Jan. 2, 2024)...................10

,
      https://www.vatican.va/roman_curia/congregations/cfaith/documents/rc_con_cfait
      h_doc_20201221_nota-vaccini-anticovid_en.html (last visited Jan. 2, 2024) ......................10

https://www.vaticannews.va/en/vatican-city/news/2022-08/vatican-covid-
      commission-video-three-vaccines.html (last visited Jan. 2, 2024.).........................29

Rule 8 ...............................................................................................................26

Rule 12(b)(6).....................................................................................................9

Transfer Order, Case No. 23-cv-0960-P .................................................................21

LITTLER MENDELSON,
P.C.
500 Capitol Mall
Suite 2000

**DEFENDANT UNITED AIRLINES, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS, OR IN THE ALTERNATIVE, TRANSFER VENUE**

## I.    INTRODUCTION

Defendant United Airlines, Inc. ("Defendant"), a Delaware Corporation, is a major American airline that principally manages its route network from its headquarters in Chicago, Illinois.  Plaintiff is a flight attendant who works out of the San Francisco International Airport.  Plaintiff's claims challenge the lawfulness of Defendant's COVID-19 vaccination policy, which was adopted and implemented by Defendant's personnel in Chicago, in the Northern District of Illinois.  Nothing in this case has any meaningful connection to the Eastern District of California.  Thus, this matter should be dismissed for lack of personal jurisdiction and improper venue or, in the alternative, transferred to the Northern District of Illinois.

Moreover, the Northern District of Illinois is clearly a more convenient forum in which to litigate Plaintiff's claims and transfer would be appropriate pursuant to 28 U.S.C. § 1404.  Defendant resides in the Northern District of Illinois and all known sources of evidence, including both witnesses and documentary repositories, are located in that District.   Additionally, there are several pending, lawsuits in the Northern District of Illinois that raise similar, if not identical, legal and factual issues to this one.  Adjudicating the claims in disparate venues wastes judicial and party resources and imposes an unreasonable risk of inconsistent rulings.

Finally, dismissal under Rule 12(b)(6) is required because the Complaint fails to aver sufficient factual material to state a claim for relief.  For example, Plaintiff raises a claim for wrongful termination/discharge, but admits in his Complaint that he was never, in fact, discharged. He was at all relevant times (and continues to be) employed fulltime by Defendant.  Plaintiff also asserts an assault claim, but never identifies any threatened "touching" by Defendant.  Plaintiff's pleading also demonstrates that his assault claim is barred by the statute of limitations.

For these reasons, Defendant respectfully requests that the Court grant its motion and dismiss Plaintiff's Complaint or transfer it to the United States District Court for the Northern District of Illinois.

## II.     FACTUAL BACKGROUND

Plaintiff alleges he is an employee of Defendant. (Compl. ¶ 1.)  He is currently employed – and at all relevant times has been employed- by Defendant as a flight attendant based out of the San Francisco International Airport.  (*Id*.; *see also* Declaration of Kirk Limacher, ("Limacher Decl.") ¶ 7).  Plaintiff acknowledges that Defendant is a Delaware corporation with its principal place of business in Chicago, Illinois.  (Compl. ¶ 7; *see also* Limacher, Decl. ¶ 3).

Plaintiff's Complaint is predicated on Defendant's COVID-19 vaccination policy, which Plaintiff contends was enacted on August 6, 2021.  (Compl. ¶ 13.)  Pursuant to the policy and Defendant's Reasonable Accommodation Program, Plaintiff alleges that he was placed on unpaid leave on October 3, 2021, because he elected not to be vaccinated against the COVID-19 virus on because of his anti-abortion beliefs. (Compl. ¶ 37).  Plaintiff contends that he sought a "religious exemption" from the COVID-19 vaccination policy based on his belief that "taking an injection of a vaccine that uses aborted fetal tissue . . . violates his strongly held religious beliefs" as a Roman Catholic.[1]  (Compl. ¶¶ 29, 30.)  Plaintiff admits that he was granted a religious exemption from the vaccination policy and that he is still employed by Defendant, but nonetheless alleges that he was "wrongfully discharged."  (Compl., First Cause of Action).

At all times, the decisions concerning the adoption and implementation of Defendant's COVID-19-related employment policies and its Reasonable Accommodation Program were made in Chicago, Illinois. (Limacher, Decl. ¶ 5.)  Since April 25, 2023, Defendant has faced challenges to its COVID-19 vaccination policy across the country, with a critical mass centralized in the Northern District of Illinois[2], or subject to pending transfer motions to the Northern District of Illinois. [3]

---

[1] The Roman Catholic Church has expressly decried this perspective, finding instead that Catholics have a moral obligation to be vaccinated.  *See, e.g.*, https://www.vatican.va/roman_curia/congregations/cfaith/documents/rc_con_cfaith_doc_20201221_nota-vaccini-anticovid_en.html (last visited Jan. 2, 2024); https://www.ncronline.org/news/opinion/catholics-seeking-religious-exemptions-vaccines-must-follow-true-church-teaching (last visited Jan. 2, 2024).

[2] *See* (App. 0001-0003, *Wickstrom, et al. v. Air Line Pilots Ass'n, Int'l*, No., 22-cv-00315, 2023 WL 3103836, at *5 (W.D. Tex. April 25, 2023) (transferring the case to the Northern District of Illinois); *Oka v. United Airlines, Inc*., 2:23-cv-135-DLB-CJS, Dkt. 22 (E.D. Kent. 2023) (Order Granting Joint Motion to Transfer); (App. 0020-0024, *Hassett v. United Airlines, Inc.*, No. 23-cv-0960-P, at Dkt. 34 (W.D. Tex. Oct. 5, 2023) (transferring the case to the Northern District of Illinois where it is currently pending as No. 23-cv-14592); App. 0074-0081, Order, *Anderson v. United Airlines, Inc.*, No. 23-C-989, 2023 WL 5721594 (N.D. Ill. Sep. 5, 2023); App. 0070-0073, Dismissal Orders, *Ellis v. United Airlines, Inc.*, No. 23-cv-123, Dkts. 30, 36 (N.D. Ill. Oct. 18, 2023) (dismissing the case and entering judgment in favor of United).

## III.     ARGUMENTS AND AUTHORITIES

### A.     The Court Lacks Personal Jurisdiction Over Defendant

Fed. R. Civ. P. 12(b)(2) provides for dismissal of a complaint for lack of personal jurisdiction.  It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant. *Cubbage v. Merchent*, 744 F.2d 665, 667 (9th Cir. 1984). California permits "(a) court of (the) state (to) exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal.Civ.Proc.Code § 410.10 (West 1973).  This statute has been interpreted to confer jurisdiction coextensive with that permitted by due process. *Hunt v. Erie Ins. Group*, 728 F.2d 1244, 1246 (9th Cir. 1984); *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1286 (9th Cir. 1984). Federal law is controlling on the issue of due process." *Amba Marketing Systems, Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 789 (9th Cir. 1977).  Here, Plaintiff failed to adequately allege facts establishing that United Airlines is subject to personal jurisdiction in California for Plaintiffs' claims.

### 1.     General Personal Jurisdiction

Where a defendant has "substantial" or "continuous and systematic" contacts with the state, a state court may have general personal jurisdiction, even if the cause of action is unrelated to the defendant's forum activities.  *Data Disc*, 557 F.2d at 1287. "Generally, a corporate defendant is at home in the "corporation's place of incorporation and its principal place of business." *BNSF Ry. v. Tyrrell*, 581 U.S. 402, 404 (2017).  As it relates to airlines, courts routinely hold that airlines incorporated and headquartered in other states are not subject to general jurisdiction solely because they operate flights to that state. *See Regueiro v. Am. Airlines, Inc.*, No. 19-23965-Civ-Martinez-Louis, 2022 U.S. Dist. LEXIS 116153, at *4 (S.D. Fla. June 30, 2022) (holding that airline

---

[3] App. 0025-0049, *Engstrom v. United Airlines, Inc., Air Line Pilots Ass'n, Int'l*, 22-CV-2130-WWB-DAB, Dkt. 48 (M.D. Fla., June 6, 2023) (Defendant's motion to dismiss for improper venue and in the alternative transfer to the Northern District of Illinois)); *see also, id.* at Dkt. 35 (ALPA's motion to transfer); (App. 0050-0069, *Panaro, et al v. United Airlines, Inc.*, No. 2023-CV-154, (E.D. Tenn. Nov. 6, 2023) (state law COVID-19 vaccine related claims); *Caraffa v. United Airlines, Inc.*, No. 1:23-cv-01800, Dkt. 1 (N.D. Ohio Sept. 15, 2023) (Title VII and state law COVID vaccine-related claims); *Sterling v. United Airlines, Inc.*, No. 23-cv-1077 (N.D. Tex. Oct. 24, 2023) (COVID vaccine-related ADA claims). An additional case was voluntarily dismissed in August 2023. *See Myers v. United Airlines, Inc.*, No. 1:23-cv-11113, Dkt. 7 (D. Mass. May 17, 2023) (Title VII and state-law vaccine claims). Defendant will continue to move to dismiss those filed in improper venues or that lack personal jurisdiction and in the alternative to move to transfer the increasing volume of new COVID vaccine cases being filed across the country to the correct and most convenient forum – the Northern District of Illinois.

headquartered and incorporated out of state was not subject to general personal jurisdiction in Florida); *Vallarta v. United Airlines, Inc.*, 497 F. Supp. 3d 790, 799 (N.D. Cal. 2020) (holding that United Airlines is not subject to general jurisdiction in California despite having two hub airports in the state.) As the Supreme Court has made clear, general jurisdiction requires more than a showing that "a corporation engages in a substantial, continuous, and systematic course of business" in a state. *Daimler AG v. Bauman*, 571 U.S. 117, 137-138 (2014) (internal quotations omitted).  Instead, the state must hold the particular position of being the location where the corporation is "at home." *Id.* at 139, n. 20 ("A corporation that operates in many places can scarcely be deemed at home in all of them.")

Defendant is a Delaware corporation with its principal place of business in Illinois. (Compl. ¶ 7); (Limacher, Decl ¶ 3.)  As the Court in *BNSF* noted, Corporations are typically "at home" in the Corporations place of incorporation and principal place of business.  *BNSF Ry.*, 581 U.S. at 402; *see also Daimler AG,* 571 U.S. at 118 (2014) ("The paradigm all-purpose forums for general jurisdiction are a corporations place of incorporation and principal place of business.")  Thus, Defendant may be subject to general jurisdiction in the District of Delaware or the Northern District of Illinois, but not in the Eastern District of California.

### 2.    Specific Personal Jurisdiction

Plaintiff similarly cannot establish specific jurisdiction over Defendant.  "Specific jurisdiction turns on the 'affiliation between the forum and the underlying controversy.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  Defendant's "suit-related conduct" must establish "a substantial connection" with California, or jurisdiction does not lie here. *Id*.  In determining whether a plaintiff has met its burden, courts should not mistake a plaintiff's forum contacts for the defendant's.  *Walden v. Fiore*, 571 U.S. 277, 289 (2014).  The Ninth Circuit has applied a three-part test to determine whether specific personal jurisdiction complies with due process:

> "(1)  The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities;

12

1    and

2    (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e.
     it must be reasonable.

3

4    As the Court in *World-Wide Volkswagan v. Woodson* held, specific jurisdiction is not established by

5    showing that that the Defendant's only contact in the jurisdiction was the Plaintiff's injury.  444 U.S.

6    286, 295–96 (1980).

7        As to the second element, one of the seminal cases promulgated by the Supreme Court is

8    *Bristol-Myers Squibb Co. v. Superior Court (BMS)*. 137 S. Ct. 1773 (2017).  In *BMS*, the plaintiffs

9    filed several complaints alleging that the defendant's product, Plavix, had damaged their health.  *Id*.

10   at 1778.  The defendant "did not develop (the product) in California, did not create a marketing

11   strategy for (it) in California, and did not manufacture (the product) . . . in California."  *Id*.  The

12   Court noted that "the bare fact that (the defendant) contracted with (an in-state) distributor was not

13   sufficient to establish personal jurisdiction in the state." *Id*.; *see also Goodyear Dunlop Tires Oper.*

14   *v. Brown*, 564 U.S. 915, 918 (2011) ("(E)ven regularly occurring sales of a product in a State do not

15   justify the exercise of jurisdiction over a claim unrelated to those sales").  "The required "affiliation

16   between the forum and the underlying controversy" means that "an activity or an occurrence (must)

17   take place in the forum State."  *Id*.  "(S)pecific jurisdiction is confined to adjudication of issues

18   deriving from, or connected with, the very controversy that establishes jurisdiction."  *Id*.

19       Here, Defendant's contacts with the Eastern District of California have nothing to do with the

20   underlying action.  While Defendant offers flight services in California, the employment decisions

21   and policies Plaintiff is challenging were adopted and implemented by Defendant at its corporate

22   headquarters in Chicago, Illinois.  (Limacher, Decl. ¶ 5.)    Like *BMS*, the fact that Defendant

23   conducts some activity in the state is irrelevant if the underlying suit has nothing to do with those

24   activities.  *BMS*, 137 S. Ct. at 1778.  Additionally, Plaintiff was never required to get the COVID-19

25   vaccine (in California or anywhere else).  To the extent he felt pressured to obtain the vaccination, it

26   would have been as a result of the vaccination policy adopted and implemented by Defendant from

27   his headquarters in Chicago, Illinois (the Northern District of Illinois).  At most, Plaintiff felt the

28   incidental effects of the implementation of the vaccination policy in California – though even that

connection is tenuous given that Plaintiff is a flight attendant who, by the nature of his job, conducts business throughout the Defendant States.  (Limacher, Decl. ¶ 7.)  Because the Supreme Court has held such indirect contact to be insufficient, Defendant is not subject to Personal Jurisdiction in California.  *BMS,* 137 S. Ct. at 1778*; see also Goodyear Dunlop Tires Oper.*, 564 U.S. at 918.

### B.    THE EASTERN DISTRICT OF CALIFORNIA IS NOT A PROPER VENUE.

#### 1.    This Case Should be Dismissed for Improper Venue Pursuant to FRCP 12(b)(3)

Plaintiff also filed his complaint in the wrong venue.  Fed. R. Civ. P. 12(b)(3).  Plaintiff alleges venue is proper 28 USC § 1391 but does not support its assertion with any factual averments in the Complaint.  Pursuant to the general venue statute, Plaintiff may bring an action in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving raise to the claim occurred; or (3) if there is no district in which an action may otherwise be brought, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.  28 USC § 1391(b).  "If the propriety of venue is challenged under Rule 12(b)(3), the plaintiff bears the burden of proving that venue is proper."  *Realtime Data LLC v. Nexenta Sys., Inc*., No. CV21707690SJOJCX, 2018 WL 2724776, at *1 (C.D. Cal. Jan. 23, 2018) (citing *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979)).  "When considering a motion to dismiss for improper venue, a court need not accept the pleadings as true and may consider facts outside of the pleadings."  *Id*.  The decision to dismiss for improper venue, or alternatively to transfer venue to a proper court, is a matter within the sound discretion of the district court. *Id*.

Here, venue is improper in the Eastern District of California because Defendant does not reside in this District.  As set forth above, Defendant is incorporated in Delaware and has its principal place of business in the Northern District of Illinois.  *See* Section III.A *supra*.  It is not subject to personal jurisdiction here as required for the venue's residency requirement.  28 U.S.C. § 1391(d).  Moreover, none of the events giving rise to Plaintiff's claims occurred within this District. Defendant did not adopt or implement the policies at issue here nor were any of the challenged

employment practices, including Defendant's decision to grant Plaintiff temporary unpaid leave, administered here.  Plaintiff has, for the duration of his employment by Defendant, been based out of the San Francisco International Airport, which is located outside of this District.  (Limacher, Decl. ¶ 7.)  As the Court in *Engstrom* found, Plaintiff's claimed residence in this state is insufficient alone to justify venue here.  *Engstrom v. Air Line Pilots Ass'n*, Case No. 6:22-cv-2130-WWB-RMN, Dkt. 53 (M.D. Fla. Nov. 6, 2023).

Moreover, Plaintiff's wrongful discharge cause of action is predicated on "(Defendant's alleged) actions infringing on (Plaintiff's) religious beliefs, denying any reasonable accommodation for his religious conflict with (Defendant's) vaccine mandate, and adverse employment action against (Plaintiff) for exercising his religious beliefs in direct violation to state law and established freedoms."  (Complaint ¶ 47.)  That is, the alleged "public policy" violation is premised exclusively on Plaintiff's contention that Defendant's COVID-19 safety policies violate anti-discrimination laws such as California's Fair Employment and Housing Act ("FEHA") and Title VII of the Civil Rights Act.  Indeed, Plaintiff expressly alleges that "FEHA's provisions prohibiting discrimination may provide the policy basis for a claim for wrongful discharge in violation of public policy" and cites to California law addressing FEHA.  (Compl. ¶ 46 (citing *Phillips v. St. Mary Reg'l Med. Ctr*., 96 Cal. App.4th 218, (2002).)   FEHA and Title VII are subject to exclusive venue provisions that limit venue to judicial districts where (1) the unlawful employment practice is alleged to have been committed, (2) where employment records relevant to such practice are maintained and administered, or (3) where the aggrieved person would have worked but for the alleged unlawful practice.  Cal. Gov. Code § 12965(a)(4); 42 U.S.C. § 2000e-5(f)(3).  Similarly, both the state and federal venue provisions have been held to govern claims that arise from the same set of facts even if they are not titled "FEHA" or "Title VII" claims.  *Brown*, 37 Cal.3d at 487; *Engstrom*, Case No. 6:22-cv-2130-WWB-RMN, Dkt. 53 at 5.  The purpose of this expansive application of the venue statute is to avoid forum shopping and to give effect to the special venue provisions.  *Brown*, 37 Cal.3d at 487 ("The Legislature clearly intended the FEHA venue provisions to apply not only to FEHA actions, but also to related claims pled under alternative theories but based on the same set of facts.  To hold otherwise would dilute the efficacy of the injured employee's remedy by gutting the

FEHA's special venue provisions."); *Engstrom*, Case No. 6:22-cv-2130-WWB-RMN, Dkt. 53 at 5.

Here, it appears that Plaintiff believes he can circumvent the exclusive venue provisions by selectively pleading only a common law count of wrongful discharge in violation of public policy, even though the "public policy" he invokes rests on anti-discrimination statutes with their concomitant venue provisions. Applying either FEHA or Title VII's venue provision, it is clear that venue would not be proper in the Eastern District of California, since Plaintiff was neither employed here nor were any of the relevant policies (or records) administered here. (Limacher, Decl. ¶¶ 5,7.); *Engstrom,* Case No. 6:22-cv-2130-WWB-RMN, Dkt 53 (M.D. Fla. 2023). For the reasons stated above, and under the FEHA exclusive venue provision, the proper venue for this action is the Northern District of Illinois.

### 2. Dismissal of The Case for Improper Venue is Warranted Via 28 U.S.C. § 1406.

Because this matter is filed in the wrong venue, 28 U.S.C. § 1406 applies to its disposition, and the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Because "dismissal of an action that could have been brought elsewhere is time-consuming and justice-defeating," courts usually find that transfer is in the interest of justice. *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990). However, dismissal is proper where filing in an improper forum evidences bad faith. *In re Hall, Bayoutree Associates, Ltd.*, 939 F.2d 802, 804 (9th Cir. 1991); *Wood v. Santa Barbara Chamber of Commerce*, 705 F.2d 1515, 1523 (9th Cir. 1983) (refusing to transfer case based on "blatant forum shopping.")

Here, Plaintiff cannot establish sufficient diligence to avoid dismissal. Plaintiff's complaint is devoid of any allegations linking the claims to the Eastern District of California. All relevant allegations pertain to conduct committed in Chicago, Illinois, not California. The only fact linking Plaintiff to this district is his alleged residency. However, as previously illustrated, Plaintiff's place of employment is, if anywhere, in the Northern District of California, not here. (Limacher, Decl. ¶ 7.) Plaintiff's deliberate forum shopping should not be rewarded. In accordance with *Wood* and *In Re Hall*, the court may choose to dismiss if the Plaintiff's actions constitute bad faith or blatant

forum shopping. *In Re Hall*, 939 F.2d at 804; *Wood*, 705 F.2d at 1523.

### 3. If The Court Opts to Transfer Rather Than Dismiss, The Northern District of Illinois is The Most Proper Venue.

If the Court decides not to dismiss the Complaint, it should transfer this matter to the Northern District of Illinois or Northern District of California under 28 U.S.C. § 1406(a). Defendant developed all relevant policies (i.e., Defendant's COVID-19 vaccination and RAP) and implemented all decisions related to Plaintiff's claims at the Company's principal place of business in Chicago, Illinois. (Limacher, Decl. ¶ 5.) Additionally, the records relevant to Defendant's COVID-19 vaccination policies and related communications are maintained in Illinois. (Limacher, Decl. ¶ 5.) Finally, Plaintiff was a flight attendant based out of San Francisco International Airport when Untied implemented the policies and granted Plaintiff's request for an exemption. Plaintiff now continues to work as a flight attendant out of San Francisco International Airport. Under FEHA's exclusive venue provision, venue is proper in only the Northern District of Illinois and the Northern District of California. However, proceeding in the Northern District of Illinois is in the interest of justice. *See*, e.g., *Courtelis v. Rosenberg*, No. 5:20-cv-220, 2022 WL 987941 at *6-7 (E.D. Ky. Mar. 31, 2022). (looking to the §1404(a) factors as a guide following a §1406 motion). As detailed further below, the most proper forum for this case is the Northern District of Illinois. As such, Defendant respectfully requests that the Court exercise its discretion and transfer this case to the Northern District of Illinois.

### C. THE NORTHERN DISTRICT OF ILLINOIS IS THE MOST CONVENIENT VENUE UNDER THE 28 U.S.C. § 1404(A) TRANSFER ANALYSIS.

Transfer to the Northern District of Illinois under 28 U.S.C. § 1404(a) is also proper and in the interest of justice. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). In ruling on a motion to transfer pursuant to § 1404(a), the court evaluates three elements: "(1) convenience of the parties; (2) convenience of the witnesses; and (3) interests of justice." *Safarian v. Maserati North America, Inc.*, 559 F. Supp. 2d 1068, 1071 (C.D. Cal. 2008). In determining whether transfer

is proper, the court must "balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). While a plaintiff's choice of venue is sometimes given deference in a §1404 venue transfer analysis, that is not the case where — as is true here —"the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

### 1. The Private Interest Factors Favor Transfer to the Northern District of Illinois

According to the Ninth Circuit, there are private and public factors that inform the Court's assessment of the "interests of justice." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). The relevant private interest factors include:

> "(1) the location where relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof."

*Jones*, 211 F.3d at 498-99. The relative convenience to the witnesses is often the most important factor to be considered in ruling on a Section 1404(a) motion. *Welenco, Inc. v. Corbell*, Civ. S-13-0287 KJM CKD at * (E.D. Cal. 2014); *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 790 (S.D. Tex. 2005). This factor weighs decisively in favor of transferring this action to the Northern District of Illinois. When witnesses are required to travel great distances, including to another state, the factor more strongly favors the location of the witnesses. *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 852 (S.D. Ohio 2007). In addition, courts have held that, "(w)hen the distance traveled is beyond 100 miles, inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Mid-Continent Cas. Co. v. Petroleum Sols.*, 629 F. Supp. 2d 759, 762 (S.D. Tex. 2009) (citing *In re Volkswagen AG*, 371 F.3d 201, 204-205 (5th Cir. 2004)).

Here, Defendant does not reside in California and there is no connection between this district and the events that gave rise to this lawsuit. The decisions at issue, documents and witnesses, and Defendant's home base of operations are all in the Northern District of Illinois. (Limacher, Decl. ¶¶

5, 9.)  Defendant's headquarters are in Chicago, as are the employees with knowledge of the claims and facts in this case, including those who reviewed Plaintiff's requests for accommodation and those who engaged in related communications with him.  (Limacher, Decl. ¶ 9.)  Subject to further investigation, the witnesses who may testify regarding Plaintiff's requests for reasonable accommodation and have communicated with Plaintiff concerning such include Kirk Limacher, Jennifer Kemp, Carlos Rivera Torres, and Adrienne Kelly, all of whom work within the Northern District of Illinois.  (Limacher, Decl. ¶ 9.)  These witnesses have relevant knowledge regarding the adoption and implementation of the employment policies at issue.

Travel to the Eastern District of California would be inconvenient for the witnesses as well as disruptive to their work and Defendant's operations.  (Limacher, Decl. ¶ 9.)  If the case were to remain in the Eastern District of California, these witnesses would be required to travel over 2,000 miles to appear.  (Limacher, Decl. ¶ 9.)  There is currently only one non-stop flight being operated out of Chicago, Illinois to Fresno, California.  (Rodriguez, Decl. ¶ 2.)  Travel time would be, at least, 4-5 hours.  Moreover, many (if not all) of the witnesses are beyond the scope of this Court's trial subpoena power as they are located more than 100 miles from this venue. Fed. R. Civ. P. 45(c)(1)(a). The factor of convenience of witnesses, therefore favors transfer to the Northern District of Illinois.

Also favoring transfer to the Northern District of Illinois over the Eastern District of California is the ease of access to sources of proof because Defendant's material physical evidence related to this action is located in Illinois.  Although courts recognize that "access to some sources of proof present a lesser inconvenience now than" in the past due to developments in technology, this does not render the factor superfluous.  *In re Volkswagen of Am., Inc*., 545 F.3d 304, 316 (5th Cir. 2008) (en banc) ("*In re Volkswagen II*").  Instead, "almost invariably, this factor will turn upon which party will most probably have the greater volume of documents relevant to the litigation and their presumed physical location in relation to the transferee and transferor venues." *Limited v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 767 (2009) citing *In re Volkswagen II*, 545 F.3d at 314-315; (*Hassett v. United Airlines, Inc*., Transfer Order, Case No. 23-cv-0960-P, at Dkt. 34.) (analyzing the volume and location of parties documentary evidence).  The bulk of the relevant communications in this matter, including communications about Plaintiff's accommodation request and approval and

documents regarding Defendant's vaccine policy and RAP are in the possession of Defendant and are in Illinois. (Limacher, Decl. ¶¶ 5-6.)  At a minimum, none of the relevant documentary evidence is located in the Eastern District of California. (Limacher, Decl. ¶ 5.)  As *Limited* elucidated, the factor of ease of access turns on the physical location of the relevant documents. *Limited*, 639 F. Supp. At 767.  Here, the physical location of the relevant documents is Chicago, Illinois. (Limacher, Decl. ¶ 5.)  Therefore, this factor supports transfer to the Northern District of Illinois.

The remaining factors, the cost of litigation and preserving judicial economy also favor Illinois.  There are a number of cases challenging Defendant's vaccination policies pending in the Northern District of Illinois, already resolved by the Northern District of Illinois, and/or awaiting ruling on motions to transfer to the Northern District of Illinois.  In one of the many related matters before the Northern District of Illinois, thirty Defendant employees individually asserted Title VII religious accommodation claims against Defendant – similar to Plaintiff's claims here – as part of a non-class collective action in *Anderson v. United Airlines, Inc*., Dismissal Without Prejudice, Case No. 23-C-989, App. 0074-0081 (N.D. Ill. 2023).  The employees likewise alleged they "all submitted, or attempted to submit requests for religious accommodation that would have allowed them to continue working at Defendant without receiving coronavirus vaccinations" and they objected to "being 'terminated in place' by being placed into an unpaid medical leave or unpaid leave of absence." *Id*.  Similarly, in *Hassett*, the plaintiff alleges, as does Plaintiff in this case, that he requested a religious exemption and was granted unpaid leave before being returned to work just months later. (*Hassett*, Transfer Order, Case No. 23-cv-0960-P, at Dkt. 34.)  And in *Wickstrom et al. v. Airline Pilots Association Intl*., Defendant's COVID-19 vaccine policy is being challenged pursuant to the ADA. (*Wickstrom, et al. v. Air Line Pilots Ass'n, Int'l*, Transfer Order, Case No., 22-cv-00315, App. 0004-0008, at *5.)  The *Wickstrom* and *Hassett* matters were transferred to Illinois upon findings that *inter alia*, the relative access to evidence, court congestion, and local interests weighed in favor of transfer. (*Id*.; (*Hassett*, Transfer Order, Case No. 23-cv-0960-P, at Dkt. 34.).)

The Northern District of Illinois recently dismissed another case with prejudice – and entered judgment in Defendant's favor, *Ellis v. United Airlines, Inc*., which involved a Defendant pilot objecting to Defendant's COVID-19 vaccine policy.  (App. 0073, *Ellis* Dismissal Orders).  In

addition to these cases, there is a pending motion to transfer in *Engstrom et al. v. Air Line Pilots Assn. Int'l.* et al., in which pilots alleged Title VII, ADA, and Florida state law claims related to Defendant's RAP and the Company's decision to place them on unpaid leave as an accommodation. (Motion to Transfer, Case No. 6:22-cv-2130-WWB-RMN, App. 0025-0049.)

In circumstances such as this, where there is multiple, overlapping cases, it is well-settled that transfer under 28 U.S.C. §1404 is appropriate to avoid duplication of effort and reduce the burden on the courts.  See *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 20-21 (1960) (Finding transfer of case under 28 U.S.C. § 1404(a) so that two lawsuits arising from single occurrence would be heard in same venue to be "in the interest of justice"); *Kay*, 494 F. Supp. 2d at 854 citing *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).  If this case is not transferred, it will not only result in costly and wasteful duplicative litigation, but it imposes a substantial risk of inconsistent rulings with the other cases that are consolidated before the courts in the Northern District of Illinois.  Transferring this litigation to Illinois will achieve judicial economy and avoid inconsistent rulings.

### 2. Other Public Interest Factors Weigh in Favor of Transfer to the Northern District of Illinois.

Also favoring the Northern District of Illinois over the Eastern District of California are the public interest transfer factors.  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-509 (1947).  These factors include: "court congestion, the local interest in resolving the controversy, and the preference for having a forum apply a law with which it is familiar."  *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 771 (9th Cir. 1991).

### a. Court Congestion

The factor of court congestion focuses on the "[a]dministrative difficulties (that) follow for courts when litigation is piled up in congested centers instead of being handled at its origin."  *Gulf Oil Corp.*, 330 U.S. at 508.  The median time from filing to disposition of civil cases in the Northern District of Illinois is 6 months, and the average time to trial is 57.7 months.  (Rodriguez, Decl. ¶ 3.)  By comparison, the Eastern District of California is experiencing a much more substantial backlog of civil matters post-COVID.  The current number of actions per judgeship totals 847 with a median

time from filing to trial of 60.6 months. (Rodriguez, Decl. ¶ 3.)   Of the cases currently in the Eastern District of California, over 18% are older than three years. *Id*.  The Eastern District of California has "experienced a long-standing judicial emergency" which was "exacerbated by the COVID-19 pandemic.[4]"  To avoid further over-burdening this Court with a case that is clearly tied to ongoing litigation in Illinois, and which would be more efficiently litigated there, Defendant respectfully requests that the Court transfer this action to its origin in the Northern District of Illinois.

### b. Local Interest in Resolving the Controversy

Also favoring the Northern District of Illinois over the Eastern District of California is "the local interest in having localized interests decided at home."  *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).  This factor is among the most critical of the public interest factors and favors the location that has an interest where the controversy primarily extends.  "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and the events that gave rise to a suit.'" *In re Apple Inc.*, 979 F.3d 1332, 1344 (Fed. Cir. 2020) quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010).  The Supreme Court has noted that "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp*., 330 U.S. at 508-509.

The proposed transferee court will have a significant interest in adjudicating cases involving Defendant since it is based in Illinois.  By contrast, there is no local interest in this matter on the part of either the Eastern District of California or the citizens of this district who will be called upon to decide this matter.   Thus, keeping the case in the Eastern District of California would "unduly burden its jury pool."  *In re Volkswagen AG*, 371 F.3d at 206 ("(j)ury duty is a burden that ought not to be imposed upon the people of a community" lacking an appropriate connection to the litigation.); *see also Gulf Oil Corp*., 330 U.S. at 508-509.  Defendant is not based in California, none of the alleged acts took place in this district, and Plaintiff himself is employed and working out of the Northern not Eastern District of California.

---

[4] https://www.caed.uscourts.gov/caednew/index.cfm/news-archive/eastern-district-of-californiae28099s-judicial-emergency-exacerbated-by-the-coronavirus-disease-2019-covid-19-pandemic/ (last visited Jan. 2, 2024).

The "local interest factor" further weighs in favor of transfer to the Northern District of Illinois here because this case presents the consequential issue of the legality of a Defendant policy, developed in Chicago, that governed its entire workforce. (Limacher, Decl. ¶ 5.)  No court can lay greater claim to an interest in such a matter than one in which Defendant has its principal place of business.

### c.      Forum Familiar with Law Applied

While Defendant readily acknowledges that this Court is more than qualified to apply the legal framework at issue and is familiar with the law, Defendant nonetheless avers that this factor favors transfer because of the substantial locus of co-pending cases before the Northern District of Illinois tribunals that rase substantially similar legal and factual issues to his case.  *See* Section I, *supra*.  It would be more efficient to adjudicate this case in the same tribunal where the lawfulness of Defendant's COVID-19 safety policies is being evaluated in at least three other matters.

### D.      PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

A complaint must contain enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) citing *Twombly*, 550 U.S. at 556).  Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).  The "(f)actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*.  If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct," the plaintiff has not stated a plausible claim for relief. *Iqbal*, 556 U.S. at 679.  A plaintiff's personal belief that his claim is true, without supporting facts that render his claim plausible, is not sufficient to defeat a motion to dismiss. *See House v. Rexam Bev. Can Co*., 630 Fed. Appx. 461, 463-64 (6th Cir. 2015).

1          **1.     Plaintiff Cannot State A Claim For Wrongful Termination in Violation of**
2          **Public Policy.**

3          To establish a *prima facie* claim of wrongful termination in violation of public policy, the
4  Plaintiff must allege: "(1) an employer-employee relationship; (2) that Defendant terminated
5  Plaintiff's employment; (3) that Defendant's termination of Plaintiff's employment violated public
6  policy; (4) that the termination was the legal cause of Plaintiff's damage; and (5) the nature and
7  extent of Plaintiff's damages."   *Holmes v. Gen. Dynamics Corp*. 17 Cal.App.4thh 1418, fn. 8.
8  (1993). Wrongful discharge claims may be dependent upon statutory violations such as FEHA.
9  *Peterman v. International Brotherhood of Teamsters*, 174 Cal.App.2d 184 (Cal. Ct. App. 1959).

10         Here, Plaintiff cannot state a claim for wrongful discharge because he was never discharged.
11 He was, and still is, an employee of Defendant.  At most, Plaintiff claims that he was placed on a
12 temporary leave in October 2021 – from which he has since returned.  (Compl. ¶¶ 20, 37).  But a
13 **voluntary** temporary leave is ***not*** tantamount to a termination of employment.  *Doe v. Cal. Dep't of*
14 *Corr. & Rehab*, 43 Cal.App.5th 721, 735 (2019).  Additionally, even if leave could be considered an
15 adverse employment action in some instances, Plaintiff has not pleaded either facts or legal
16 contentions to substantiate such a claim in his current complaint.

17                     **a.     Religious Discrimination**

18         Additionally, Plaintiff has not pleaded facts sufficient to support a finding that any discharge
19 was made in contravention of public policy (element 3). From the complaint, it is unclear whether
20 Plaintiff's wrongful termination claim is premised on disparate treatment or failure to accommodate.
21 Plaintiff also fails to specifically identify the law that was allegedly violated by placing him on leave
22 but does briefly mention California' FEHA statute.  In either event, he fails to plead facts that give
23 rise to a plausibility of disparate treatment or failure to accommodate.  *Iqbal*, 556 U.S. at 678.

24                     **b.     Disparate Treatment**

25
26         Under FEHA, to establish a *prima facie* case of disparate treatment, the plaintiff must
27 generally show: "(1) he was a member of a protected class, (2) he was qualified for the position he
28 sought or was performing competently in the position he held, (3) he suffered an adverse

employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Guz v. Bechtel National, Inc.* 24 Cal.4th 317, 355 (2000).  At a minimum, the complaint must raise a plausible inference that the adverse action is tied to the protected category and the "mere possibility of misconduct" is insufficient to entitle the plaintiff to relief and cannot satisfy the Rule 8 pleading standards.  *Iqbal*, 556 U.S. at 678.  At the pleadings stage, a plaintiff must allege some facts supporting the inference that his termination was because of his religion.  *See Whitehead v. Pacifica Senior Living Mgmt. LLC*, No. 21-15035, 2022 WL 313844, at *2 (9th Cir. 2022); *Broadnax v. Adams & Assocs., Inc.*, 817 Fed.Appx. 512, 513 (9th Cir. 2020); *see also Mayes v. Kaiser Found. Hosps.*, 917 F.Supp.2d 1074, 1079 (E.D. Cal. 2013) (granting a motion to dismiss plaintiff's discrimination claim because the complaint lacked "meaningful detail suggesting the termination was because of (plaintiff being a member of a protected class)").  Although this prima facie framework is "an evidentiary framework and not a pleading standard," it serves as "a useful touchstone in evaluating whether plaintiff has a plausible claim." *Duke v. City Coll. of San Francisco*, 445 F.Supp.3d 216, 232 (N.D. Cal. 2020).

In this case, Plaintiff alleges that Defendant's COVID-19 vaccination policy, which was implemented **before** his request to be exempted from it, intentionally discriminated against his religious beliefs although he had not previously informed Defendant that he held such beliefs.  Thus, Plaintiff cannot plausibly plead any connection between his religious beliefs and the COVID-19 vaccination requirement – that applied to all employees – and was implemented before he requested the religious exemption.  *See Mayes*, 917 F.Supp.2d at 1079 (granting a motion to dismiss plaintiff's discrimination claim because the complaint lacked "meaningful detail suggesting the termination was because of (plaintiff being a member of a protected class)".)  Plaintiff's Complaint must be dismissed for the failure to state a claim on that basis alone.

Plaintiff also fails to allege any other circumstantial evidence illustrating a discriminatory motive (element four).  Plaintiff has not proffered any facts showing that similarly situated individuals outside his protected class were treated more favorably. To the contrary, Plaintiff alleges that Defendant's COVID-19 vaccination policies were applied equally to all employees, which undermines any claim of discriminatory animus towards Plaintiff.  *Leake v. Raytheon Tech Corp.*,

No. CV-22-00436-TUC-RM, 2023 WL 224857, at *5 (D. Ariz. Feb. 27, 2023) (finding plaintiffs "have not and cannot state a disparate treatment claim" where defendant's vaccination mandate was facially neutral and plaintiffs "fail(ed) to demonstrate they were treated any differently" from other similarly-situated employees); *Gage v. Mayo Clinic*, No. CV-22-02091, 2023 WL 3230986, at *3 (D. Ariz. May 3, 2023) (dismissing claim because plaintiff failed to allege facts showing similarly situated individuals outside her religion were treated more favorably, rather than that vaccinated individuals were treated more favorably than non-vaccinated individuals); *Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir. 2007) (courts evaluate FEHA claims under the Title VII framework). Specifically, Plaintiff alleges that under the policy all employees who remained unvaccinated by the deadline, including those who did not request a medical or religious exemption, would be terminated. Thus, unlike Plaintiff, who requested and was granted temporary unpaid leave, similarly situated employees without religious accommodation requests were treated worse (not better) than Plaintiff.

If anything, Defendant treated Plaintiff more favorably than other employees who remained unvaccinated and did not seek or qualify for a religious accommodation. Rather than terminating Plaintiff, Defendant provided him with temporary unpaid leave and returned him to full-time status on or around March 28, 2022. Because Plaintiff has failed to plead a "plausible" case of disparate treatment under FEHA, his wrongful termination in Violation of Public Policy claim must also fail. *Estes v. Monroe*, 120 Cal.App.4th 1347, 1355 (2004).

### c. Failure to Accommodate

To establish a prima facie case for religious discrimination under a failure-to-accommodate theory, an employee must show "(1) (s)he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) (s)he informed h(er) employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected h(er) to an adverse employment action because of h(er) inability to fulfill the job requirement." *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006); *Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir. 2007) (courts evaluate FEHA claims under the Title VII framework). "With respect to unpaid leaves, an unpaid leave "may be a reasonable accommodation provided that the leave is likely to be effective in

allowing the employee to return to work at the end of the leave, with or without further reasonable accommodation . . . ." (2 C.C.R. § 11068(c)); *Budwig v. Allegiant Air, LLC*, No. 1:18-cv-01068-EPG, at *9 (E.D. Cal. Sep. 2, 2020).)  Here, there was no failure to accommodate because Defendant did, in fact, provide an appropriate accommodation in the form of leave.  Plaintiff raises no claim or allegation that he sought a different accommodation or that the accommodation provided was unreasonable in light of the circumstances.

Moreover, Plaintiff's Complaint fails to plead specific facts establishing a bona fide religious belief that would have foreclosed him from fulfilling his job duties.  Numerous courts have dismissed Title VII claims based on similar theories where plaintiffs have summarily pleaded religious objections to COVID-19 vaccines but did not plead facts demonstrating how vaccination conflicts with their religion. *See Troulliet v. Gray Media Grp., Inc*., No. CV 22-5256, 2023 WL 2894707, at *5 (E.D. La. Apr. 11, 2023); *Rogers v. Nebraska Urb. Indian Health Coal., Inc*., 8:22-CV-410, 2023 WL 2990720, at *5 (D. Neb. Apr. 18, 2023); *Gage v. Mayo Clinic*, No. CV-22-02091, 2023 WL 3230986, at *3 (D. Ariz. May 3, 2023) ("threadbare" reference to religious beliefs insufficient where plaintiff "does not explain her religious beliefs," nor "explain how practicing them conflicted with her employment duties").  Here, Plaintiff contends that he "submitted his religious exemption request along with a letter from his priest explaining his conflict of conscience with the COVID-19 vaccines."  (Compl. ¶ 30.)  He also stated that he was asked for additional information to substantiate his religious accommodation request and he claims that he responded to this request."  (*Id*. at ¶¶ 31-33.)  However, Plaintiff neither attaches this correspondence nor pleads any facts that connecting his "conflict of conscience" with his religion.  To the contrary, Plaintiff expressly pleads that his priest's letter set forth Plaintiff's own "conflict" and not that of the Roman Catholic Church.  *Id*.  In other words, the only plausible interpretation of Plaintiff's own pleading is that he chose not to receive the vaccine because of non-religious qualms about the vaccine.[5]

---

[5] Plaintiff contends that "taking an injection of a vaccine that uses aborted fetal tissue in its use and/or development violates his strongly held religious beliefs."  (Compl. ¶ 29.)  However, that allegation is untethered to any specific concern about the COVID-19 vaccine.  Plaintiff never alleges that the available COVID-19 vaccines from Modena or Pfizer "used aborted fetal tissue."  Nor could he because, as the National Institute of Health explains, mRNA vaccines as a class "are not designed, developed or produced in fetal cell lines."  *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8205255/ (last visited Jan. 2, 2024).  Indeed, the Pope has characterized CVOID vaccination as an "act of love" and a "moral imperative" for Catholic communities.

1    Nothing in the Complaint alleges facts supporting a bona fide religious conviction that required

2    accommodation.

3                    **2.       Plaintiff Cannot State A Claim For Assault.**

4            Finally, in Count 2 of the Complaint, Plaintiff alleges that Defendant assaulted him by

5    "threaten(ing) intentional, imminent harmful and offensive contact upon Plaintiff by way of forced

6    vaccine injection…"  This claim fails for two reasons.  First, Plaintiff has failed to bring this claim

7    within the limitations period, and second, Plaintiff failed to properly plead a claim assault.

8                    **a.       Plaintiff's Assault Claim is Time Barred**

9            According to California Code of Civil Procedure Section 335.1, an action for assault of an

10   individual must be commenced within two years of the intentional act.  Plaintiff's complaint asserts

11   that "Defendant's COVID-19 vaccine mandate caused Plaintiff to reasonable believe that Defendant

12   was about to carry out the threat of harmful and offensive contact."  (Compl. ¶ 56).  By Plaintiff's

13   own admission, Defendant's vaccine mandate was implemented on August 6, 2021.[6]  (Compl. ¶ 13).

14   Plaintiff filed this action on September 27, 2023.  More than two years has elapsed from the date of

15   the vaccine mandate to the filing of this complaint.  Pursuant to California CCP § 335.1, the statute

16   of limitations has run and Plaintiff's cause of action for Assault is time barred.

17                    **b.       Plaintiff has Failed to Plead a Plausible Claim For Assault**

18           Alternatively, Plaintiff has failed to state a claim for Common Law Assault.  To properly

19   plead a claim for Assault, a Plaintiff must allege: (1) defendant acted with intent to cause harmful or

20   offensive contact, or threatened to touch plaintiff in a harmful or offensive manner; (2) plaintiff

21   reasonably believed she was *about to be* touched in a harmful or offensive manner or it reasonably

22   appeared to plaintiff that defendant was about to carry out the threat; (3) plaintiff did not consent to

23   defendant's conduct; (4) plaintiff was harmed; and (5) defendant's conduct was a substantial factor

24   in causing plaintiff's harm."  *So v. Shin*, 212 Cal.App.4th 652, 668-669 (2013).  Mere words,

25   however threatening, will not amount to an assault.  *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590,

26   _____

     https://www.vaticannews.va/en/vatican-city/news/2022-08/vatican-covid-commission-video-three-vaccines.html (last
27   visited Jan. 2, 2024.)
     [6] At the time, Plaintiff was obviously aware that he could seek an exemption from the vaccine
28   requirement, which he did.  He was granted the requested accommodation and placed on leave on
     November 16, 2021.

1604 (2012).  "Generally speaking, an assault is a demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present." *Loury v. Standard Oil Co*., 63 Cal.App.2d 1, 5 (1944).  Whether an individual suffered an apprehension of imminent harmful or offensive contact is judged by a reasonable person standard. *Id.*

Here, Plaintiff's assault claim must fail as the threatened harmful and offensive contact was nothing more than "mere words."  *Plotnik*, 208 Cal.App.4th at 1604.  Plaintiff alleges that Defendant's COVID-19 vaccine mandate threatened imminent harmful and offensive contract upon him.  However, the vaccine mandate at all times was communicated via written policies.  There was no person holding a needle upon Plaintiff threatening him to accept the vaccine.  Indeed, there is no plausible allegation that Defendant intended to touch Plaintiff at all as certainly, Defendant would not have administered any vaccination itself.   Assault requires that the threat be "*immediate* injury on the person of another *then present*."  Additionally, assault requires an imminent threat harmful or offensive touching.  As the Court in *Loury v. Standard Oil Co.* noted, "the pointing of a gun at another in a threatening manner is sufficient to cause fear of personal injury *unless* it is known by the person at whom the weapon is pointed that the gun is in fact unloaded."  *Loury*, 63 Cal.App.2d at 7. Here, no reasonable person would have apprehended imminent harmful contact because there was never any immediacy concerning the injection of the vaccine.  Plaintiff was at no time required to receive the vaccine.  Instead, Defendant offered Plaintiff the ability to take unpaid leave through their reasonable accommodation program. As such, because Plaintiff has failed to plead nothing more than "mere words" his claim for Common Law Assault must be dismissed.

## IV.    CONCLUSION

Plaintiffs' claims against Defendant cannot proceed in this Court for the reasons set forth above.  Plaintiffs have failed to establish that this Court has personal jurisdiction over Defendant and cannot show that the exercise of personal jurisdiction over Defendant in this case comports with the limitations of the Due Process Clause of the constitution. Venue is not proper in this district as the events giving rise to the claims occurred in Chicago, Illinois.  Finally, Plaintiffs fail to allege sufficient facts to state a claim as a matter of law.

1

2  Dated: January 9, 2024                    LITTLER MENDELSON P.C.

3

4                                            _____
                                            Michelle A. Clark
5                                            Gerardo Hernandez
                                            Emilio A. Rodriguez
6
                                            Attorneys for Defendant
7                                            United Airlines, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28